## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **H.S. MARTIN CONSTRUCTION CORP., DBA INSURANCE CLAIMS CONSTRUCTION SERVICES,** | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:16CV00010 |
| v. | ) ) | **OPINION AND ORDER** |
| **LEE COUNTY SCHOOL BOARD, ET AL.,** | ) ) ) | By: James P. Jones United States District Judge |
| Defendants. | ) ) | |

*Ilya I. Berenshteyn and K. Justin Hutton, The Senter Law Firm, Bristol, Tennessee, and Russell L. Egli, Egli Law and Loss Claim Specialist, Knoxville, Tennessee, for Plaintiff; Melissa W. Robinson and Johneal M. White, Glenn Robinson & Cathey, PLC, Roanoke, Virginia, for Defendant Risk Management Programs Inc.; and Jennifer D. Royer, Guynn & Waddell, P.C., Salem, Virginia, for Defendant Lee County School Board.*

In this case invoking the court's diversity jurisdiction, the plaintiff, H.S. Martin Construction Corp., doing business as Insurance Claims Construction Services ("H.S. Martin"), has asserted two breach-of-contract claims against defendant Lee County School Board ("School Board"), as well as a claim of bad faith breach of contract against defendant Risk Management Programs, Inc. ("Risk Management"), and a claim of intentional interference with prospective economic advantage against defendants Robinson & Associates, Inc. ("Robinson"), Highlands Claims Services, LLC ("HCS"), and William Curtis Prater. The School

Board and Risk Management have moved to dismiss the Amended Complaint for failure to state any viable claims against them. In response, H.S. Martin has moved for leave to amend its Amended Complaint. For the reasons that follow, I will grant the motions to dismiss and deny the Motion for Leave to Amend Complaint.

I.

The plaintiff alleges the following facts, which I must accept as true for the purpose of deciding the pending motions.

H.S. Martin is a Tennessee corporation with its principal place of business in Tennessee. The School Board, a public entity located in Lee County, Virginia, owns and operates Pennington Gap Middle School ("Middle School") and Lee County High School ("High School"). Risk Management is a group self-insurance risk pool based in Richmond, Virginia. Robinson is a Virginia corporation with a principal place of business in Lynchburg, Virginia. HCS is a Virginia corporation with a principal place of business in Abingdon, Virginia.[1] Prater, a citizen of Virginia, was a senior claims specialist working for Robinson and HCS. He was hired by Risk Management to work as the claims adjuster for the School Board for claims related to damages sustained during two separate weather incidents that occurred in 2014 and 2015. Prater was named as a defendant in this lawsuit, but he

---

[1] HCS has not yet entered an appearance or otherwise participated in this litigation.

-2-

died several months before the plaintiff filed its original complaint in this case, and Prater's estate has not been served with process.

### A. The Middle School.

On July 27, 2014, the Middle School suffered damage due to a weather incident. The same day, the School Board contacted H.S. Martin and requested estimates for emergency mitigation and reconstruction. A representative of the School Board signed an Authorization to Pay form that stated:

> I am authorizing the third party named below to be added as a "named party" on the initial and all future "approved" payments from the claim payable proceeds as a result of my insurance claim arising out of Hail damage. Claim number: 052B2014107694

> I understand that I will be named and listed on the initial and subsequent checks, due to me being the named insured on the policy in force and binding contract I have with you, as being my insurance carrier.

> I am invoking my right as a policy holder through the "Terms and Conditions" portion of my policy, for cause that if a situation arises out of the handling of my claim, that the third party named below will be able to discuss, negotiate, and assist in concluding my insurance claim on my behalf.

> I am giving my allocation to them as the named insured on the policy, or appointed representative of the named insured.

> This joint agreement allows third party to protect and preserve their security interest through and by, being a named party on the insurance proceeds, payable through endorsed check from you as my insurance carrier and or Mortgage Company.

> I also understand that my signing of this agreement does not waive any of my rights as the named insured or policy holder.

(Compl. Ex. 6, ECF No. 1-6.)  The "Third Party Information" portion of the form was filled in with the name, address, phone number, and tax identification number of H.S. Martin.

H.S. Martin's work at the Middle School was directed by representatives of the School Board, Prater, and Risk Management.  On August 13, 2014, H.S. Martin contacted Prater to request partial payment for work completed up to that time.  When it did not receive payment, H.S. Martin asked representatives of the School Board for instruction on how to bill for the emergency mitigation work that had been completed.

On September 10, 2014, a representative of Risk Management informed H.S. Martin and the School Board that it would release $250,000 as advance payment for work completed and would not issue any further payments until all work was completed.  On September 24, 2014, representatives of the School Board authorized payment of $250,000 to H.S. Martin.  On September 26, 2014, representatives of the School Board and Risk Management discussed meeting with H.S. Martin to reach an agreed price for the emergency mitigation work that had been completed and the remaining repairs to be completed.  Sometime after September 27, 2014, H.S. Martin received check number 147010 in the amount of $250,000.

-4-

On October 1, 2014, H.S. Martin contacted representatives of the School Board and Risk Management to discuss issues of water leaks through the temporary repairs and the use of additional personnel to monitor barriers and keep students out of work areas. H.S. Martin suggested spraying for airborne contaminates, and representatives of the School Board directed H.S. Martin to spray. On October 2, 2014, Prater represented that Risk Management had authorized thermal fogging and additional workers to provide on-site supervision, and he directed H.S. Martin to complete work on the Middle School roof as quickly as possible while also taking every measure to avoid further leaks.

On October 17, 2014, Alan Ingles, Maintenance Superintendant for the School Board, sent an email to representatives of Risk Management asserting that he had not received requested paperwork from Risk Management and that he needed the paperwork to show to the School Board. Prater was responsible for providing the paperwork to Risk Management, the School Board, and H.S. Martin. Prater responded, asserting that the agreed price estimate would require one large appraisal of the loss because Risk Management preferred to issue one payment per claim, and that he had not been able to complete the appraisal.

On October 28, 2014, H.S. Martin contacted representatives of the School Board and Risk Management to request payment of additional funds for the Middle

School project. The following day, Ingles requested that Risk Management pay H.S. Martin for the work completed to date.

On November 13, 2014, Prater represented to the School Board and H.S. Martin that the agreed price appraisal had been completed and forwarded to Risk Management. Risk Management inspected the property on November 18, 2014, with Garry Smith, Vice President of H.S. Martin. On December 23, 2014, Risk Management issued a check to H.S. Martin in the amount of $692,608.05, indicating that the money was payment for "Roof Repair, First Dry Out, Second Dry Out, Third Dry Out, Fourth Dry Out, Agg Shop building, Football Field Lights, Alternative Ed Building, Janitorial Equipment Building, Greenhouse Building, and Structural Repairs." (Am. Compl. ¶ 50, ECF No. 32.) Risk Management indicated that an additional $88,435.68 was owed for the work listed, but that money was being withheld pending receipt of further information from H.S. Martin. The total price for all work completed was $1,491,614.00, and the School Board and Risk Management paid a total of $942,608.05.

H.S. Martin provided the further information requested. On May 22, 2015, H.S. Martin completed all work and requested payment in full for its services. Representatives of the School Board forwarded the request for final payment to Risk Management. School Board representatives were sent copies of correspondence throughout the mitigation and construction process and did not

-6-

direct H.S. Martin to discontinue its work at the Middle School. H.S. Martin has not received payment of the outstanding balance of $549,005.95 for work performed at the Middle School.

## B. The High School.

On January 6, 2015, the High School suffered damage from a weather incident. The following day, Ingles contacted Smith and informed him that an insurance claim had been submitted to Risk Management for the weather damage. That day, at the request of Ingles and the School Board, H.S. Martin began making emergency repairs to the High School. On January 12, 2015, the Director of Maintenance, as a representative of the School Board, signed an Authorization to Pay form for claim number 052B2015118636, arising out of water damage at the High School, that named H.S. Martin as the third party. The text of the form was the same as the one that had been executed about six months earlier in relation to the hail damage at the Middle School.

Prater, the claims adjuster, requested that Smith submit estimates directly to him for the High School. Prater also asked Smith to assist him in preparing estimates for other schools damaged by the same weather incident. On January 14, 2015, Smith sent an email to Prater requesting estimates for three other schools and asked Prater to let him know when he was starting the estimate for the High School

so that Smith could tell him the number of labor hours that would be required to perform certain work on the bleachers.

On January 20, 2015, Smith sent Prater estimates for remediation and repair of damages at the High School. Three days later, Ingles informed Smith in an email that Mr. Carter, the superintendent of schools, had the paperwork for Smith to sign. The email also discussed a meeting of Carter, Smith, and Prater to discuss the estimates, checks, and other paperwork for the High School.

On January 29, 2015, Smith, Carter, Ingles, and Prater met at the High School and agreed that H.S. Martin would be the contractor for the mitigation and reconstruction of multiple buildings owned by the School Board. On February 4, 2015, Prater contacted Smith to request an email about the moisture readings from the High School gym floor.

H.S. Martin performed temporary repairs to the roof and windows of the High School and dried out the gym, which had sustained rain damage. On April 14, 2015, H.S. Martin submitted an invoice for this mitigation work to the School Board requesting payment in the amount of $123,569.51. Reconstruction work on the High School was scheduled to begin on May 16, 2015, and Smith sent an email to Prater stating that H.S. Martin would start performing reconstruction work on the gym on that date. By April 2, 2015, the School Board, Risk Management, and Prater had received estimates for all of the work to be performed at the High

School. The estimates referred to H.S. Martin as the general contractor and referred to the estimates as contracts.

Before H.S. Martin could begin reconstruction work on the High School, Prater contacted Scott Flooring and began to negotiate for reconstruction of the High School gym floor. On May 8, 2015, Prater told H.S. Martin that H.S. Martin was not to perform the reconstruction work, in breach of the alleged contract between H.S. Martin and the School Board. H.S. Martin asserts that it suffered damages in the amount of $24,842.85, representing supplies purchased for the reconstruction work and lost profits. H.S. Martin also alleges that it has not received payment for the mitigation work it performed at the High School.

Count I of the Amended Complaint asserts a breach of contract claim against the School Board based on failure to make payments arising out of the High School project. Count II asserts a breach of contract claim against the School Board based on failure to make payments due for the work performed at the Middle School.

Count III asserts a claim of bad faith breach of contract against Risk Management for failure to make payments to H.S. Martin as directed by the School Board for work performed at the Middle School and the High School. H.S. Martin asserts that it is a third-party beneficiary of the contract between the School Board and Risk Management and relied on the promises and covenants in the insurance

-9-

policy to its detriment.  Count IV asserts a claim against Prater, Robinson, and HCS for intentional interference with prospective economic advantage.

II.

The procedural history of this case is unduly complex.  The original Complaint by H.S. Martin named as a defendant Virginia Association of Counties ("VACO") instead of Risk Management.  On June 16, 2016, the School Board moved to dismiss that Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that (1) any alleged contract between the School Board and H.S. Martin was void for failure to comply with the Virginia Public Procurement Act; (2) the allegations failed to establish a breach of contract under Virginia law; (3) to the extent that the plaintiff invoked the Uniform Computer Information Transactions Act ("UCITA") to support its breach of contract claims, the UCITA is inapplicable to the facts presented; (4) H.S. Martin did not properly appeal the School Board's disallowance of his claim; and (5) the School Board cannot be liable to H.S. Martin for bad faith denial of an insurance claim or tortious interference with prospective economic advantage.

On the same day that the School Board moved to dismiss the original Complaint, "Risk Management Programs Inc. f.k.a. VACO Risk Management Programs, Inc." filed with H.S. Martin a Joint Motion to Amend Complaint and for Extension of Time to Respond.  (ECF No. 28.)  The motion sought leave for the

plaintiff to amend the Complaint "to reflect the proper name of the entity described in Plaintiff's Complaint which should be Risk Management Programs Inc., formerly known as VACO Risk Management Programs Inc., a separate and distinct legal entity from Virginia Association of Counties." (*Id.* at 1.) The magistrate judge granted this motion, and on July 11, 2016, the plaintiff filed an Amended Complaint that named as a defendant "Risk Management Programs, Inc." rather than VACO. (Amended Compl. 1, ECF No. 32.) The Amended Complaint is substantially identical to the original Complaint in all other respects.

On July 29, 2016, H.S. Martin moved for leave to amend the Amended Complaint again, and without waiting for leave of court simultaneously filed a "First Amended and Restated Complaint" (hereafter "FARC"). (ECF No. 38.) H.S. Martin asserts that the FARC

> more precisely sets forth the facts giving rise to the causes of actions [sic] against the named Defendants, removes certain causes of actions [sic] and adds new causes of action, more clearly sets forth the applicable state laws that impact the lawsuit against the Defendants, is not futile, does not prejudice any of the Defendants as no answers have been filed to the original complaint and no discovery has taken place in this lawsuit.

(Mot. for Leave to Amend Compl. 1, ECF No. 37.)

A little more than two hours later on July 29, 2016, Risk Management moved to dismiss the Amended Complaint for failure to state a claim, contending that (1) Risk Management is not a party to the School Board's insurance policy,

(2) H.S. Martin is not a third party beneficiary of the insurance policy, and

(3) under Virginia law, there is no independent cause of action for bad faith breach

of contract. In its response to Risk Management's motion to dismiss, filed about

two hours later on July 29, 2016, H.S. Martin relies on allegations from both the

Amended Complaint and the FARC. H.S. Martin also filed that day a response to

the School Board's Motion to Dismiss, which likewise relied on allegations from

the FARC as well as the Amended Complaint.

On August 5, 2016, the School Board filed a Reply Memorandum in support

of its Motion to Dismiss. In addition to responding to the plaintiff's arguments

regarding the Amended Complaint, the School Board also requests the court to

deny the Motion for Leave to Amend Complaint, arguing that amendment would

be futile and the FARC does not resolve the problems present in the Amended

Complaint.

On August 15, 2016, Risk Management filed a Brief in Opposition to

Plaintiff's Motion for Leave to Amend Complaint. In its brief, Risk Management

argued that (1) Virginia law does not recognize a cause of action for bad faith

breach of insurance contract; (2) H.S. Martin is neither a party to the insurance

coverage contract nor a third-party beneficiary; (3) H.S. Martin has failed to state a

claim of unjust enrichment against Risk Management, referring to a new claim

asserted in the FARC, and (4) the FARC failed to set forth a viable claim of

tortious interference with contract against Risk Management. On the same day, the School Board followed suit and filed a Response in Opposition to Plaintiff's Motion for Leave to Amend Its Complaint, which simply incorporated by reference Risk Management's brief and its own reply brief to its Motion to Dismiss. On August 18, 2016, H.S. Martin filed a response to Risk Management's Motion to Dismiss. On August 23, 2016, Risk Management filed a reply brief in support of its motion to dismiss.

The pending motions have been fully briefed and orally argued and are ripe for decision. I will first consider the motions to dismiss as they relate to the Amended Complaint. I will then address the plaintiff's motion for leave to amend.

III.

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992).

In deciding whether a complaint will survive a Rule 12(b)(6) motion to dismiss, the court evaluates it and any documents attached or incorporated by

-13-

reference. *Sec'y of State for Defence v. Trimble Navigation Ltd.,* 484 F.3d 700, 705 (4th Cir. 2007). In ruling, the court must regard as true all of the factual allegations contained in the complaint, *Erickson v. Pardus,* 551 U.S. 89, 94 (2007), and must view those facts in the light most favorable to the plaintiff. *Christopher v. Harbury,* 536 U.S. 403, 406 (2002).

### A. Claims Against the School Board.

The School Board argues that any purported contract between H.S. Martin and the School Board is ultra vires and void ab initio for failure to comply with the competitive bidding requirements and other strictures of the Virginia Public Procurement Act, Va. Code Ann. §§ 2.2-4300 – 4377 ("VPPA"). The School Board further contends that the Amended Complaint fails to aver that the representatives who allegedly contracted on behalf of the School Board were authorized to do so.

In response, H.S. Martin argues that the VPPA does not apply to the contracts at issue here. H.S. Martin asserts that the crucial contracts for purposes of this lawsuit are the Authorization to Pay forms, not construction contracts. H.S. Martin further argues that it is exempt from complying with the VPPA because the School Board adopted a different standard operating procedure for addressing mitigation and restoration projects. H.S. Martin contends it has adequately pleaded that the representatives of the School Board were authorized to contract on the

School Board's behalf and did so, and that the School Board breached its contracts with H.S. Martin.

The VPPA was enacted to ensure that

> public bodies in the Commonwealth obtain high quality goods and services at reasonable cost, that all procurement procedures be conducted in a fair and impartial manner with avoidance of any impropriety or appearance of impropriety, that all qualified vendors have access to public business and that no offeror be arbitrarily or capriciously excluded.

Va. Code Ann. § 2.2-4300(C). The VPPA states that "[a]ll public contracts with nongovernmental contractors for . . . the purchase of services, insurance, or construction, shall be awarded after competitive sealed bidding, or competitive negotiation as provided in this section, unless otherwise authorized by law." Va. Code Ann. § 2.2-4303(A). More specifically, the VPPA states:

> Construction may be procured only by competitive sealed bidding, except that competitive negotiation may be used in [certain specified] instances upon a determination made in advance by the public body and set forth in writing that competitive sealed bidding is either not practicable or not fiscally advantageous to the public, which writing shall document the basis for this determination[.]

Va. Code Ann. § 2.2-4303(D). "'Construction' means building, altering, repairing, improving or demolishing any structure, building or highway, and any draining, dredging, excavation, grading or similar work upon real property." Va. Code Ann. § 2.2-4301.

Regarding emergencies, the VPPA states:

In case of emergency, a contract may be awarded without competitive sealed bidding or competitive negotiation; however, such procurement shall be made with such competition as is practicable under the circumstances. A written determination of the basis for the emergency and for the selection of the particular contractor shall be included in the contract file. The public body shall issue a written notice stating that the contract is being awarded on an emergency basis, and identifying that which is being procured, the contractor selected, and the date on which the contract was or will be awarded. This notice shall be posted on the Department of General Services' central electronic procurement website or other appropriate websites, and in addition, public bodies may publish in a newspaper of general circulation on the day the public body awards or announces its decision to award the contract, whichever occurs first, or as soon thereafter as is practicable. Posting on the Department of General Services' central electronic procurement website shall be required of any state public body. Local public bodies are encouraged to utilize the Department of General Services' central electronic procurement website to provide the public with centralized visibility and access to the Commonwealth's procurement opportunities.

Va. Code Ann. § 2.2-4303(F).

H.S. Martin has not alleged compliance with these competitive bidding and negotiation requirements. Instead, H.S. Martin argues that the VPPA does not apply because it was hired to perform mitigation and restoration rather than new construction. That argument is unavailing, as the statute's definition of "construction" expressly includes "repairing" a structure. Va. Code Ann. § 2.2-4301. H.S. Martin also contends that its breach of contract claim against the School Board is based on the Authorization to Pay forms rather than a construction contract, but I find this to be a distinction without a difference. The Authorization to Pay forms address payment for construction services performed for the School

-16-

Board.  H.S. Martin cannot rely on these forms to get around the VPPA and its requirements.

The VPPA provides an exemption for:

> Any county, city or town whose governing body has adopted, *by ordinance or resolution*, alternative policies and procedures which are (i) based on competitive principles and (ii) generally applicable to procurement of goods and services by such governing body and its agencies, except as stipulated in subdivision 12.

Va. Code § 2.2-4343(A)(10) (emphasis added).  H.S. Martin does not allege that that School Board had passed any resolution adopting alternative procurement policies and procedures.  It is clear from counsel's representations at oral argument that H.S. Martin has no reason to believe that any such resolution exists.  H.S. Martin is not relieved of the VPPA requirements based solely on an alleged prior course of conduct that is inconsistent with the VPPA.

A school board in Virginia can only exercise "those powers expressly granted by the General Assembly, those necessarily or fairly implied therefrom, and those that are essential and indispensable." *W.M. Schlosser Co. v. Sch. Bd. of Fairfax Cty.*, 980 F.2d 253, 255 (4th Cir. 1992) (internal quotation marks and citation omitted).  "Significantly, '[i]f there is *any* reasonable doubt whether legislative power exists, that doubt *must* be resolved against the local governing body.'"  *Id.* (quoting *City of Richmond v. Confrere Club of Richmond, Va., Inc.*, 239 Va. 77, 387 S.E.2d 471, 473 (1990)).  Through the VPPA, the General

Assembly has limited a school board's power to enter into certain kinds of contracts.

When a school board attempts to enter into a contract without complying with the VPPA, the school board seeks to exercise powers beyond those granted to it by the General Assembly, and the resulting contract is therefore ultra vires. A contract that is ultra vires is void ab initio and has no legal effect. *Richard L. Deal & Assocs., Inc. v. Commonwealth*, 299 S.E.2d 346, 348 (Va. 1983). "[N]o performance by either party thereto can give the unlawful contract validity or serve as the basis of any right of action upon it and the doctrine of estoppel has no application." *Cty. of York v. King's Villa, Inc.*, 309 S.E.2d 332, 335 (Va. 1983). To allow a party to enforce a contract that was executed without complying with the VPPA would undermine the strength of the VPPA and thwart its purposes. H.S. Martin's claims against the School Board fail as a matter of law, and Counts I and II of the Amended Complaint must be dismissed for failure to state claims upon which relief can be granted.

### B. Claim Against Risk Management.

Risk Management contends that H.S. Martin's claim against it is not viable because (1) Risk Management is not an insurer and is not the entity that issued the School Board's insurance policy; (2) H.S. Martin is not a third party beneficiary to the insurance policy; (3) Virginia does not recognize an independent cause of

-18-

action for bad faith breach of contract; and (4) the absence of an enforceable contract between the School Board and H.S. Martin is fatal to H.S. Martin's claim against Risk Management.

The final issue is dispositive. A contract that is void and unenforceable against the School Board is equally unenforceable against Risk Management, the School Board's insurance administrator. H.S. Martin cannot recover funds under the insurance policy that it claims are due to it based on its invalid contract with the School Board.

Moreover, the Authorization to Pay forms did not make H.S. Martin an intended third-party beneficiary of the School Board's insurance policy, nor do the forms constitute contracts in their own right. First and foremost, Risk Management did not sign the Authorization to Pay forms. *See Copenhaver v. Rogers*, 384 S.E.2d 593, 596 (Va. 1989) ("The essence of a third-party beneficiary's claim is that others have agreed *between themselves* to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain" (emphasis added).) Second, the Authorization to Pay forms do not purport to require Risk Management to do anything; they merely authorize Risk Management to list H.S. Martin as a payee on future checks.

For these reasons, Count III of the Amended Complaint fails to state a cognizable claim against Risk Management, and it will be dismissed.

-19-

IV.

Under the rules, a complaint may be amended once without leave within 21 days of service of a motion under Rule 12(b). Fed. R. Civ. P. 15(a)(1)(B). H.S. Martin could not avail itself of this rule, however, because it had already amended its complaint once, to substitute Risk Management for VACO, before seeking leave to file the FARC.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that courts should freely give leave to amend pleadings when justice so requires. Fed. R. Civ. P. 15(a)(2). I may only deny a motion to amend a pleading where there is prejudice to the opposing party or bad faith on the part of the moving party, or where the proposed amendment would be futile. *Laber v. Harvey,* 438 F.3d 404, 426–27 (4th Cir. 2006).

In the FARC, H.S. Martin alleges the following additional facts. The Authorization to Pay forms are essentially assignments and gave H.S. Martin a security interest in any payments made by Risk Management to the School Board relating to the mitigation work at the Middle School and High School. Risk Management approved certain work and authorized H.S. Martin to perform that work. Risk Management and the School Board both assured H.S. Martin that additional payments would be made. The School Board received a new roof as a result of H.S. Martin's work and did not fully pay the new roof. The School Board

received a significant amount of other restoration work for which it did not fully pay H.S. Martin. The School Board received some of the insurance proceeds and did not remit them to H.S. Martin. Prater, Robinson, and HCS acted negligently in processing the claims.

Based on these and the original allegations, the FARC asserts new claims of unjust enrichment and conversion against the School Board. The FARC also asserts claims of unjust enrichment and interference with contract against Risk Management. Finally, the FARC asserts a new claim of negligence against Prater, HCS, and Robinson.

The School Board and Risk Management ask the court to deny leave to amend because the proposed amendments would be futile. I agree. The proposed new claims against the School Board and Risk Management are merely additional attempts to recover under the alleged contracts despite failure to comply with the requirements of the VPPA. To permit these claims to proceed would undermine the purposes of the VPPA.

Regarding the new claim against Prater, HCS, and Robinson, only Robinson is properly before the court at this time, and it mistakenly filed an answer — which is called a "Response" (ECF No. 51) — to the FARC, apparently unaware that the court had not granted H.S. Martin leave to amend. Robinson has not argued that the FARC fails to state a claim against it. Nevertheless, I find that the FARC fails

to set forth a viable claim of negligence in light of the invalidity of the alleged underlying contract, Robinson's alleged status as an agent of Risk Management, and Virginia's economic loss doctrine. *See Gerald M. Moore & Son, Inc. v. Drewry*, 467 S.E.2d 811, 813 (Va. 1996) (explaining that where a plaintiff sues an agent for negligently performing a contract to which his principal is a party, "even if the agent's negligence is established, absent privity of contract, Virginia's economic loss doctrine precludes the recovery of damages based on economic loss alone"). Therefore, I will deny the Motion for Leave to Amend Complaint as to the negligence claim as well.

## V.

For the foregoing reasons, it is **ORDERED** as follows:

1. The Motion to Dismiss filed by Lee County School Board (ECF No. 18) is GRANTED;

2. The Motion for Leave to Amend Complaint (ECF No. 37) is DENIED;

3. Defendant Risk Management Programs, Inc.'s Motion to Dismiss Amended Complaint (ECF No. 40) is GRANTED; and

4. Robinson must respond to the Amended Complaint (ECF No. 32) within 14 days of the date of this Opinion and Order.

ENTER:  December 21, 2016

/s/  James P. Jones
United States District Judge